MORITT HOCK HAMROFF & HOROWITZ LLP
Counsel to the Debtors and Debtors-in-Possession
400 Garden City Plaza
Garden City, NY 11530
(516) 873-2000
Marc L. Hamroff, Esq.
Leslie A. Berkoff, Esq.
Theresa A. Driscoll, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:

DIAL-A-MATTRESS OPERATING CORP. et al.,

                                                          Debtors.

Chapter 11
Case No. 09-41966 (DEM)
(Jointly Administered)

-----------------------------------------------------------------X

**MOTION OF DEBTORS FOR ORDER (I) APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (II) AUTHORIZING ASSUMPTION AND ASSIGNMENT AND/OR REJECTION OF EXECUTORY CONTRACTS AND <u>UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF</u>**

TO THE HONORABLE DENNIS E. MILTON,
UNITED STATES BANKRUPTCY JUDGE:

        Dial-A-Mattress Operating Corp., 1-800-Mattress Corporation, and Dial-A-Mattress International, Ltd., as debtors and debtors in possession herein (collectively, the **<u>"Debtors"</u>**), by their undersigned counsel, hereby move this Court pursuant to Sections 105(a), 363, and 365 of Title 11 of the United States Code (the **<u>"Bankruptcy Code"</u>**) and Rules 2002, 6003, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the **<u>"Bankruptcy Rules"</u>**) for entry of an order: (i) approving the sale of substantially all of the Debtors' assets free and clear of liens, claims, encumbrances and other interests; (ii) authorizing the assumption

and assignment and/or rejection of certain executory contracts and unexpired leases; and (iii) granting related relief (the **"Motion"**) and respectfully represent as follows.

## PRELIMINARY STATEMENT

1. In the months preceding the commencement of these cases, the Debtors actively pursued different restructuring options including, working capital, a joint venture partner, long term credit and/or a potential purchaser. In connection with this effort prepetition, the Debtors solicited offers and met with a number of prospective buyers. Ultimately, the Debtors executed an Asset Purchase Agreement dated March 20, 2009 (the **"Purchase Agreement"**) with Newco Trading, LLC, (the **"Purchaser"**), a subsidiary of Sleepy's Holdings, LLC, pursuant to which the Purchaser has agreed to purchase substantially all of the assets relating to the Debtors' business operations (as described in detail in the Purchase Agreement, the **"Acquired Assets"**). A copy of the Purchase Agreement is annexed hereto as *Exhibit A*. By separate order entered on March 31, 2009 (the **"Sale Procedures Order"**)[1], this Court approved certain sale and auction procedures. (A copy of the Sale Procedures Order is annexed hereto as *Exhibit B*).[2] By this Motion, the Debtors seek authority to sell all or substantially all their assets, assume and assign and/or reject executory contracts to the Successful Bidder at the Auction.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409. The Debtors are in possession of their assets and continue to

---

[1] Capitalized terms used but not defined herein shall have the meanings given to such terms in the Purchase Agreement or Sale Procedures Order, as applicable.

[2] Certain of the dates set forth in the Sale Procedures Order have changed and the Debtors have submitted a proposed amended order to the Court for consideration and entry. Upon entry of such amended order, it will be served on the parties required to be served pursuant to the Sale Procedures Order.

manage their businesses as debtors and debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. The statutory predicates for the relief requested herein are Sections 105(a), 363(f) and 365(a) of the Bankruptcy Code.

## **RELEVANT BACKGROUND**

3. In 1983, Napoleon Barragan formed a New York Corporation, named Dial-A-Mattress Franchise Corporation. In 1990 the name was formally changed to Dial-A-Mattress Operating Corp. d/b/a 1800Mattress.com and d/b/a 1800Mattress, (**"Dial"**). Dial sells and delivers beds, mattresses and bedding related products (**"Products"**) via telemarketing, Internet and brick-and-mortar traditional retail. The Debtors' registered mark for 1-800-Mattress combined with the strength of the Recommended Bedding Retailer (**"RBR"**) Network, enable the Debtors to fulfill orders worldwide, and generate stronger gross margins than conventional retail stores and lightening fast home delivery versus the competition.

4. Dial currently maintains and operates various showrooms in New York, New Jersey, Connecticut, Virginia, Maryland, and California. Over recent months in an effort to reduce operating expenses, and in light of decreased profitability in certain locations, approximately nineteen (19) showrooms and related warehouses have been closed. Currently, the Debtors maintain and operate twenty-two (22) showrooms and three (3) warehouses.

5. In 1991, Dial-A-Mattress International Ltd., (**"Dial Int'l"**), a Delaware corporation, was formed for the purpose of serving as a tenant in some of the retail stores for Dial as well as facilitating the franchising of the brand. In December of 2004, Dial Int'l expanded its operations by acquiring, through merger, 1-(888) Mattress Franchise Corp.

6. In addition to serving as the tenant at some of the retail stores, Dial Int'l is the franchisor under certain franchise agreements with Consolidated Mattress Co., Inc.

("**Consolidated**") and Amalgamated Mattress Co. Inc. ("**Amalgamated**").  Consolidated and Amalgamated operate the telemarketing business for the Debtors in specific territories.

7. Consolidated operates the telemarketing business and fulfilling the internet sales in the following exclusive territories: (i) Massachusetts: (Essex, Middlesex, Suffolk, Norfolk, Plymouth, Bristol, Barnstable, Worcester, Dukes, Nantucket, Worcester, Franklin, Hampshire, Hampden and Berkshire; (ii) New Hampshire (Hillsborough, Rockingham, Stafford); (iii) Vermont (Windham, Bennington, Windsor, Rutland, Addison, Orange, Chittenden, and Washington); (iv) Rhode Island (all counties); (v) New Jersey: (Atlantic, Burlington, Camden, Cape May, Cumberland, Gloucester, Mercer, Salem, Somerset, Hunterdon and Ocean): (v) Pennsylvania (Berks, Bucks, Chester, Delaware, Lehigh, Montgomery, Northhampton, Philadelphia): (vi) Delaware (Kent, New Castle).

8. Amalgamated operates the telemarketing and internet businesses in Florida in Charlotte, Collier, Desoto, Glades, Hendry, Lee, Monroe, Dade, Broward, Palm Beach, Martin, St. Lucie, Okeechobee, Indian River, Brevard, Hardee, Flagler, Hernando, Lake, Highlands, Marion, Hillborough, Osceola, Manatee, Orange, Pasco, Seminole, Pinellas, Sumter, Polk, Volusia, Sarasota, Citrus, Alachua, Baker, Bradford, Clay, Columbia, Duval, levy, Nassau, Putnam, St. Johns, and Union.

9. In November of 2003, 1-800-Mattress Corporation ("**1-800**"), a Delaware Corporation was formed, and is the current franchisor entity which sells 1800mattress.com franchises.  As of the Petition Date, 1-800 had one franchisee, Rectangle Corporation ("**Rectangle**"), which operates in Connecticut.  Rectangle conducts business via telemarketing, the internet and showrooms.

## Events Leading to Bankruptcy

10. As the Court is aware, the Debtors' chapter 11 cases are preceded by and have occurred during a global financial crisis that has created unprecedented difficulties for retailers. Like other segments of the retail industry, the retail mattress and bedding industry is experiencing a downturn. As a result of the industry downturn, combined with increasing competition and a weakened overall economy, the Debtors have experienced a significant decline in sales. Given their financial performance, the Debtors were not able to stay current on their obligations to vendors and certain landlords. In addition, prior to the bankruptcy filings, the Debtors defaulted on certain of their obligations to their secured lenders.

11. In response to these challenging conditions, the Debtors explored restructuring alternatives and actively sought new sources of capital. In the weeks leading up to commencement of these cases, however, it became apparent that the Debtors would not have the ability to obtain the financing necessary for a successful in or out-of-court restructuring. As a result, the Debtors aggressively pursued a prompt sale of substantially all of their assets. Given the market conditions, very few potential purchasers were willing to consider significant investment in a financially distressed retail business without imposing unacceptable conditions upon the Debtors or requiring a Chapter 11 filing before concluding a sale.

12. Despite these challenges, the Debtors were able to conclude negotiations for a sale of substantially all of their assets. In particular, on March 20, 2009, the Debtors signed the Purchase Agreement with the Purchaser, which agreement will serve as the "stalking horse" at the Auction.

13. On March 17, 2009 (the "**Involuntary Petition Date**"), Blue Bell Mattress Co. d/b/a King Koil Northeast/Comfort Solutions, Sealy, Inc. and 6225 Jericho Turnpike, LLC

filed an Involuntary Petition placing Dial into an involuntary Chapter 7 proceeding pursuant to 11 U.S.C. § 303(a) and (b).

14. On March 23, 2009 (the "**Voluntary Petition Date**"), Dial consented to the entry of an order of relief and, prior to the filing of this Motion, filed a separate motion to convert the Dial's Chapter 7 case to Chapter 11 pursuant to 11 U.S.C. § 707(b)

15. On the Voluntary Petition Date, 1800 and Dial Int'l each filed voluntarily petitions for relief under Chapter 11 of Bankruptcy Code. Since the Voluntary Petition Date, the Debtors have been in possession of their assets and continue to manage their businesses as debtors and debtors-in-possession pursuant to 11 U.S.C. §§1107 and 1108.

16. On March 30, 2009, the Office of the United States Trustee appointed an official committee of unsecured creditors in these cases (the **"Committee"**).

17. A prompt sale of the Debtors' assets is necessary. Absent a significant infusion of liquidity, the Debtors cannot continue to operate their business as a going concern. The Debtors have already borrowed in excess of $600,000.00 pursuant to those certain Interim and Final Orders (A) Authorizing Debtors to Obtain Post-Petition Financing from Newco Trading LLC on a Secured and Super-Priority Administrative Basis; (B) Authorizing Use of Cash Collateral and Finding Adequate Protection; and (C) Granting Related Relief. [ECF Docket Nos. 37; 87].

18. As set forth above, by order entered on March 31, 2009, this Court approved certain sale and auction procedures. Since the approval of the Sale Procedures (as more fully discussed below), the Debtors have established – with assistance of their claims and noticing agent, Kurtzman Carson Consultants LLC (**"KCC"**) – a Virtual Data Room (**"VDR"**) which enables interested bidders to review online key data, contracts, financials and other

pertinent information regarding the Debtors' assets and business operations (subject to execution of a confidentiality agreement).

19. By Order entered April 16, 2009, this Court approved the Debtors' retention of Trenwith Group LLC (**"TRN"**) as their investment banker. Since March 26, 2009, TRN has been actively assisting the Debtors, with participation and involvement of the Committee, with the marketing and sales effort. To date, there have been approximately (200) expressions of interest in the Debtors' assets. As of the date hereof, approximately (34) Non-Disclosure Agreements (**"NDAs"**) were distributed to interested bidders, of which (19) NDAs have been signed, thereby enabling such parties to conduct diligence in the VDR.

## THE PURCHASE AGREEMENT

20. The Purchase Agreement includes the following salient provisions:[3]

- Purchase Price - The consideration to be paid by the Purchaser under the Purchase Agreement is $2.1 million, subject to certain adjustments (most notably, positive adjustments based on cure costs relating to leases and contracts to be assumed and assigned under the Purchase Agreement).

- Acquired Assets – All of the Seller's rights in and to the Assigned Leases together with all permanent fixtures, improvements and FF&E; all of the Seller's rights in and to all Assigned Contracts; and all Intellectual Property and related rights and any causes of action relating to past or current infringement of Intellectual Property; customer lists; Books and Records; advertising and signage; Seller Shareholder and officer loans receivable.

- Excluded Assets - Debtors' cash and cash equivalents, accounts receivable, avoidance actions (except avoidance actions against non-debtor parties to the contracts and leases assigned to the Purchaser), tax refunds and security deposits (except those under leases to be transferred to the Purchaser).

---

[3] To the extent there are any inconsistencies between the summary description of the Purchase Agreement contained herein and the terms and conditions of the Purchase Agreement, the terms of the Purchase Agreement control.

- Closing Date- The date that is no later than five (5) business days after the satisfaction of the following conditions: (i) entry of the Sale Order, including a finding that Purchaser is a "good faith" purchaser within the meaning of Section 363(m) of the Bankruptcy Code and waiving the stay periods under Bankruptcy Rules 6004 and 6006; (ii) no injunction issued staying consummation of the Transactions; and (iii) any applicable waiting period under Hart-Scott Rodino shall have expired.

- "As Is" Sale - The Acquired Assets are to be conveyed to and accepted by Purchaser on an "as is," "where is" and "with all faults" basis, free of any warranties or representations whatsoever, whether express or implied, except as expressly set forth in the Purchase Agreement.

- Assumed Liabilities- Assigned Contracts and all cure costs.

- Excluded Liabilities- Any obligation, claim or amount under the Workers Adjustment and Retraining Notification Act or the Consolidated Omnibus Budget Reconciliation Act of 1985.

21. In addition, the Purchase Agreement provides that the Seller shall pay the Purchaser a break-up fee (and expense reimbursement) in an amount equal to $75,000.00 (the **Break-Up Fee**"). The Break-Up Fee has been approved by this Court in connection with the Sale Procedures Order entered on March 31, 2009. The Purchase Agreement also proposes to employ a key employee – the Debtors' Chief Executive Officer – Napoleon Barragan. This provision reflects Purchaser's recognition that the relationship between Mr. Barragan and the company represents a significant portion of the inherent value of the Debtors' business.

**RELIEF REQUESTED**

22. The Debtors believe that the sale of the Acquired Assets (the **"Sale"**) is in the best interests of their estates and creditors. Accordingly, by this Motion, the Debtors seek entry of an order, substantially in the form of the order annexed hereto, pursuant to Sections 105, 363 and 365 of the Bankruptcy Code and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure, (i) approving the sale of the assets free and clear of liens, claims,

encumbrances and other interests, (ii) authorizing the assumption and assignment of the Assigned Contracts and Assigned Leases, and (iii) authorizing the rejection of all contracts and leases that are not Assigned Contracts and Assigned Leases (the **<u>Rejected Contracts and the Rejected Leases</u>**") and together with the Assigned Contracts and the Assigned Leases, the "**<u>Contracts and Leases</u>**"); and (iv) granting related relief. A schedule of the Contracts and Leases is attached hereto as *Exhibit C*.

23. The Debtors seek to conclude the sale of the Acquired Assets as expeditiously as possible. At the same time, however, the Debtors wish to ensure that all financially qualified interested parties are provided a reasonable opportunity to submit competing bids so the estate receives the maximum return on the sale of the Acquired Assets. Accordingly, by separate motion, the Debtors have already sought entry of an order approving procedures for the submission of higher and better offers.

**I.** **<u>Bidding Protections and Sale Procedures.</u>**

24. On March 31, 2009, and in accordance with the Sale Procedures Order, the Debtors served the Sale Procedures Notice (including Cure Schedules) by first class mail on the following parties: (a) the Debtors' prepetition and postpetition lenders and their counsel; (b) the Debtors' combined thirty largest unsecured creditors; (c) the Office of the United States Trustee; (d) all counsel and parties having filed written requests for notice in these cases; (e) counsel for the Committee; (f) the non-debtor parties under the Contracts and Leases; (g) counsel for the Purchaser; (h) all parties known to have asserted any lien, claim or encumbrance on or against any of the Acquired Assets; and (i) all parties known by the Debtors to have expressed an interest in purchasing the Assets.

**II.** **<u>Assumption and Assignment and/or Rejection of Executory Contracts and Unexpired Leases.</u>**

25. By this Motion, the Debtors request the entry of an order pursuant to Sections 365(a), (b) and (f) authorizing the assumption and assignment of the Assigned Contracts and Assigned Leases.

26. The Sale Procedures require that, in connection with the submission of bids, bidders must identify which contracts and leases are included in the Acquired Assets.

27. The Sale Procedures Order also established procedures and relevant deadlines for objecting to the Debtors' proposed cure amounts (which were included on the Sale Procedures Notice and served on non-debtor parties to the Contracts and Leases on March 31, 2009) as well as adequate assurance requests.

28. Prior to the commencement of these Chapter 11 cases, the Debtors have implemented expense-reduction initiatives, including the closing of unprofitable retail store locations and related warehouses (together, the **"Closed Stores and Warehouses"**). By this Motion, the Debtors seek entry of an order authorizing the rejection of the leases governing the Closed Stores and Warehouses effective as of the date the Debtors surrendered possession of the leased premises for each of the Closed Stores and Warehouses to the respective landlords. Attached hereto as *Exhibit D* is a schedule of the Closed Stores and Warehouses (including the proposed effective dates of rejection).

29. Further, any Contracts and Leases not assumed and assigned to the Successful Bidder at the Auction will be rejected pursuant to Section 365(a) of the Bankruptcy Code. By this Motion, the Debtors request the entry of an order authorizing the rejection of the Rejected Contracts and the Rejected Leases effective as of the earlier of (i) the date the Debtors surrendered possession and delivered the keys to the leased premises to the landlords and (ii) the

date of entry of the Sale Order. The authority for this relief is more fully set forth in the Memorandum of Law filed concurrently herewith.

30. Included among the Contracts and Leases are three (3) franchise agreements (together, the **"Franchise Agreements"**) with Amalgamated, Consolidated and Rectangle (together, the **"Franchisees"**). The Sale Procedures Order requires the Purchaser or any prospective bidder to notify the Debtors, the Committee and the Franchisees of its intent to acquire and assume the obligations under the Franchise Agreements by no later than May 11, 2009. A discussion of the legal issues presented by any assumption and assignment or rejection of the Franchise Agreements is more fully set forth in the Memorandum of Law in Support of the Motion.

### III. Approval of Sale of Property Free and Clear of Interests.

31. The Debtors request entry of an order approving the sale of the Acquired Assets (or those additional or other assets as the Successful Bidder at the Auction may designate) free and clear of all liens, claims, encumbrances or other interests pursuant to Section 363(f) of the Bankruptcy Code. The Debtors submit, as more fully set forth in the supporting Memorandum of Law, that they are able to satisfy the requirements of Section 363(f) thereby authorizing the "free and clear" sale of the Acquired Assets.

### IV. Good Faith Purchaser Protections Under Section 363(m) of the Bankruptcy Code.

32. The Debtors request that the Sale Order provide that the Purchaser (or the Successful Bidder at the Auction) be provided with the protections afforded by Section 363(m) of the Bankruptcy Code. The basis for this relief is more fully set forth in the supporting Memorandum of Law.

## V. Waiver of 10-Day Stay Period Under Bankruptcy Rules 6004 and 6006

33. By this Motion, the Debtors respectfully request the entry of an order waiving the requirements of Rules 6004 and 6006 of the Bankruptcy Rules. The Debtors submit that sufficient cause exists to waive the 10-day stay period under Bankruptcy Rules 6004 and 6006. The basis for such request is more fully discussed in the supporting Memorandum of Law.

## NOTICE AND PROCEDURE

34. In accordance with Bankruptcy Rules 2002 and 6006, the Debtors will provide notice of this motion, together with the related Memorandum of Law and proposed order, to: (a) the Office of the United States Trustee for the Eastern District of New York; (b) the Debtors' prepetition and postpetition secured lenders; (c) counsel to the Committee; (d) the Franchisees and their counsel; (e) all entities known or reasonably believed to have asserted a lien, encumbrance, claim or interest in any of the assets for sale; (f) all non-debtor parties to the Contracts and Leases; (g) all parties who have expressed an interest in the Debtors' assets as of the date hereof; and (h) all parties who have filed a notice of appearance in these cases as of the date hereof.

35. No previous motion for the relief sought herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Sale Order, substantially in the form annexed hereto, and grant such other and further relief as may be just and proper.

Dated: Garden City, New York
      April 28, 2009

      /s/ Marc L. Hamroff
Marc L. Hamroff, Esq.
Leslie A. Berkoff, Esq.
Theresa A. Driscoll, Esq.
MORITT HOCK HAMROFF & HOROWITZ LLP
400 Garden City Plaza
Garden City, NY 11530
(516) 873-2000
*Counsel to the Debtors and Debtors- in-Possession*

F:\Dial A Mattress\Bankruptcy Filings\Sale Motion\Sale Motionv4.DOC