UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:

DIAL-A-MATTRESS OPERATING CORP., et al.,

                                          Debtors.

-----------------------------------------------------------------X

Chapter 11
Case No. 09-41966 (DEM)
(Jointly Administered)

## ORDER (I) APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (II) AUTHORIZING ASSUMPTION AND ASSIGNMENT AND/OR REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF

Upon the motion (the **"Motion"**)[1] of the above-captioned debtors and debtors in possession (collectively, the **"Debtors"**) for entry of an order pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the **"Bankruptcy Code"**) and Rules 2002, 6003, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**) (i) approving the sale of all or substantially all of the Debtors' assets free and clear of liens, claims, encumbrances and other interests (the **"Sale"**), pursuant to the Asset Purchase Agreement (defined below) and the Motion; (ii) authorizing the assumption and assignment and/or rejection of certain executory contracts and unexpired leases; and (iii) granting related relief; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be

---

[1] Capitalized terms used but not defined herein shall have the meanings given to such terms in the Motion or Asset Purchase Agreement (as defined below), as applicable.

provided; and following the Auction, which was conducted in accordance with the Sale Procedures Order entered on March 31, 2009 (the **Initial Sale Procedures Order**"), as amended by an Amended Sale Procedures Order entered on April 28, 2009 (the **Amended Sale Procedures Order**" and together with the Initial Sale Procedures Order, the **Sale Procedures Orders**"), the Debtors determined the bid of the Purchaser (as defined below), as more fully set forth in that certain Amended and Restated Asset Purchase Agreement, dated as of July 31, 2009 (the **Asset Purchase Agreement**"), by and between the Debtors, on the one hand, and Newco Trading, LLC (the **Purchaser**") to be the "highest and best bid" and, this Court finds Purchaser to be the "successful bidder"; and this Court having reviewed the Motion and all pleadings related thereto, including without limitation the objections filed by Amalgamated Mattress Co., Inc. (**Amalgamated**") and Consolidated Mattress Co., Inc. (**Consolidated**" and, together with Amalgamated, the **Consolidated Group**") and Rectangle Corporation (collectively, the **Franchisees**")[2], the Statements in Support of the Motion filed by the Official Committee of Unsecured Creditors (the **Committee**") and the Response filed by the Purchaser and other documents filed by other parties in interest, and having considered the statements of counsel and the evidence proffered at the hearing on the Motion (the **Sale Hearing**"); and upon the record of the Sale Hearing, the Court's Decision on Debtors' Motion to Sell Substantially All of Its Assets Under 11 U.S.C. § 363 dated June 24, 2009 (the **Decision**"), the hearing conducted on July 9, 2009 and all other hearings held with regard to the subject matter hereof; and all objections to the relief requested in the Motion having been overruled, withdrawn or resolved by

---

[2]     The Franchise Agreement with Consolidated is hereinafter referred to as the **Consolidated Franchise Agreement**"; the Franchise Agreement with Amalgamated is hereinafter referred to as the **Amalgamated Franchise Agreement**"; and the Franchise Agreement with Rectangle is hereinafter referred to as the **Rectangle Franchise Agreement**". The Consolidated Franchise Agreement, Amalgamated Franchise Agreement and Rectangle Franchise Agreement are collectively referred to as the **Franchise Agreements**."

consent; and after due deliberation and sufficient cause appearing therefor, this Court hereby makes the following Findings of Fact and Conclusions of Law.[3]

## I.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.     This Court has jurisdiction to hear and determine the Motion and grant the relief requested therein, pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b).  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (K), (N) and (O).  Venue of the Debtors' Chapter 11 cases (collectively, the **"Chapter 11 Cases"**) and the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     The statutory predicates for the relief sought in the Motion are sections 105, 363 and 365 of the Bankruptcy Code, and Rules 2002, 6003, 6004, 6006, 9007 and 9014 of the Bankruptcy Rules.

C.     The Sale Procedures Order approved certain Sale Procedures and notice procedures for the Sale Hearing.  The Sale Procedures Order provided that it was immediately effective upon entry, and such Order is a final and non-appealable order and remains in full force and effect.

D.     As evidenced by the Affidavits of Service previously filed with this Court and the testimony at the Sale Hearing, (i) notice of the Motion, and of the hearing to consider approval of the Motion, was given in accordance with the Sale Procedures Order and as otherwise required by applicable law; (ii) due, proper, timely, adequate, and sufficient notice of the auction conducted on May 26, 2009 (the **"Auction"**), the Motion, the Sale Hearing, and the Sale have

---

[3]     Findings of Fact shall be construed as conclusions of law, and conclusions of law shall be construed as *findings* of fact when appropriate. <u>See</u> Fed. R. Bankr. P. 7052.  Any statements of this Court from the bench at the Sale Hearing shall constitute additional findings of fact and conclusions of law as appropriate and are expressly incorporated by reference into this Order.

been given; (iii) all parties required to be served with the Notice of Sale Procedures pursuant to the Initial Sale Procedures Order were served on March 31, 2009 and April 28, 2009 with respect to the Amended Sale Procedures Order; (iv) such notice was good and sufficient, in compliance with the Sale Procedures Orders and appropriate under the circumstances; and (v) no other or further notice of the Motion, the Sale Hearing, or the relief sought with respect thereto shall be required.

E.      Unless otherwise defined herein, capitalized terms used herein shall have the meanings stated in the Motion or Asset Purchase Agreement, as applicable.

F.      Good and sufficient reasons for approval of the Asset Purchase Agreement have been articulated. The relief requested in the Motion is within the reasonable business judgment of the Debtors, and is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

G.      The Debtors have demonstrated both (i) good, sufficient and sound business purpose and justification, and (ii) emergent circumstances for the entry into the Asset Purchase Agreement and the consummation of Sale pursuant to, *inter alia*, section 363(b) of the Bankruptcy Code prior to confirmation of the Plan, in that, among other things, the immediate consummation of the Sale is necessary and appropriate to avoid immediate and irreparable harm to the Debtors' estates, and thereby maximize the value to the Debtors' estates. There is a substantial risk of deterioration in value of the Debtors' assets if the Sale is not consummated quickly and creditors' recoveries may be diminished.

H.      On May 26, 2009, the Debtors conducted the Auction in accordance with the Sale Procedures Orders entered by this Court. The Debtors fully marketed their assets for sale, and the Auction established in the Sale Procedures Orders afforded a full, fair and reasonable

opportunity for any Qualified Bidder to make a higher and better offer. At the conclusion of the Auction, the Debtors determined, in consultation with Trenwith Group LLC (**"TRN"**) and the Committee, and its financial advisors, CBIZ Mahoney Cohen (**"CBIZ"**), that the bid of the Purchaser as memorialized in the Asset Purchase Agreement, a copy of which is attached hereto as *Exhibit A*, was the highest and best bid.

I.       The terms and conditions set forth in the Asset Purchase Agreement are fair and reasonable. The Debtors and the Purchaser extensively negotiated the terms and conditions of the Asset Purchase Agreement in good faith and at arm's length and without collusion or fraud, and the Purchaser is entering into the Asset Purchase Agreement in good faith within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the protections afforded thereby.

J.       The Purchaser is not an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code. Neither the Debtors nor the Purchaser have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of or implicate section 363(n) of the Bankruptcy Code to the Auction, the Asset Purchase Agreement or to the consummation of the transactions contemplated thereby. The Purchaser is entitled to all the protections and immunities of section 363(m) of the Bankruptcy Code.

K.       The offer of the Purchaser, upon the terms and conditions set forth in the Asset Purchase Agreement, including the form and total consideration to be realized by the Debtors pursuant to the Asset Purchase Agreement, (i) is the highest and best offer received by the Debtors for the Debtors' assets to be sold thereunder; (ii) is fair and reasonable; and (iii) is in the best interests of the Debtors' creditors and estates.

L.      The Debtors, with the assistance of TRN, the Committee and CBIZ, conducted the Auction in accordance with the Sale Procedures Order.  The Auction afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer than that reflected in the Asset Purchase Agreement.  The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner.  The Asset Purchase Agreement will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.  The Debtors' determination, after consultation with TRN, the Committee, CBIZ and counsel to the Debtors and the Committee, to enter into the Asset Purchase Agreement with the Purchaser represents a valid and sound exercise of the Debtors' business judgment.

M.      A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including, but not limited to:  (i) the Committee and its counsel; (ii) the Office of the United States Trustee for the Eastern District of New York; (iii) the Franchisees and their counsel; (iv) the Debtors' prepetition and postpetition lenders (together, the **"Lenders"**); (v) all known creditors of the Debtors; (vi) all entities known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in any of the Assets offered for sale; and (vii) all affected federal, state and local regulatory and taxing authorities, including the Internal Revenue Service.

N.      The conduct of the Sale will provide an efficient means for the Debtors to dispose of their assets in accordance with the terms of the Asset Purchase Agreement.

O.      Pursuant to section 363(f) of the Bankruptcy Code, the assets to be sold to the Purchaser pursuant to the Asset Purchase Agreement (the **"Acquired Assets"**) shall be sold free and clear of any and all mortgages, security interests, conditional sales or title retention agreements, pledges, hypothecations, rights, liens, judgments, interests, encumbrances or claims

of any kind or nature, including, without limitation, any and all "claims" as defined in section 101(5) of the Bankruptcy Code, whether arising by agreement, any statute or otherwise and whether arising before, on or after the commencement dates of these Chapter 11 Cases (collectively, the **"Liens and Claims"**), including, without limitation, the Liens and Claims, if any, of (i) the Franchisees arising from or related to the Franchise Agreements, and (ii) the Lenders, with all such Liens and Claims to attach to the proceeds of Sale and any other amounts payable to the Debtors under the Asset Purchase Agreement, with the same priority, validity, force and effect as existed prior to the sale of such assets under the Asset Purchase Agreement; provided, further, that the terms of this Order shall in all respects be subject to, and shall not in any manner alter or modify the Final DIP Order or the liens, protections, benefits, and priorities granted to the Lenders thereunder. The Lenders have consented to the Debtors' entry into the Asset Purchase Agreement.

P.    The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their creditors and their estates if the Sale were not free and clear of Liens and Claims, including but not limited to, the Liens and Claims of the Franchisees.

Q.    The Debtors may sell the Acquired Assets free and clear of all Liens and Claims because, in each case, one or more of the requirements set forth in Section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied, subject to the terms and conditions of this Order. Those holders of Liens and Claims who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code. The Franchisees and those holders of Liens and Claims who did object fall within one or more of the other subsections of Section 363(f) of the Bankruptcy Code and are adequately protected (to

the extent they are entitled to adequate protection) by having their Liens and Claims, if any, attach to the cash proceeds of the Sale ultimately attributable to the property against or in which they claim a Lien and Claim.

R.      The Debtors have full corporate power and authority to execute and deliver the Asset Purchase Agreement and all other documents contemplated thereby, and no further consents or approvals are required for the Debtors to consummate the transactions contemplated by the Asset Purchase Agreement, except as otherwise specifically set forth in the Asset Purchase Agreement.

S.      Neither the Purchaser nor Sleepy's LLC (or any of their affiliates and subsidiaries) is a successor to the Debtors or their bankruptcy estates by reason of any theory of law or equity, and the Purchaser shall not assume or in any way be responsible for any liability or obligation of the Debtors and/or their bankruptcy estates, except as otherwise expressly provided in the Asset Purchase Agreement.

T.      The Debtors' decision to reject the Rejected Contracts and Rejected Leases (including, but not limited to, the Franchise Agreements) is supported by sound business justification.

U.      Trademarks are not "intellectual property" under the Bankruptcy Code. As such, Section 365(n) is inapplicable to the Debtors' trademarks that are included in the Acquired Assets.

V.      The Franchisees are not entitled to any of the protections of Section 365(n) of the Bankruptcy Code. Upon the Closing Date, all of the Franchisees' rights, entitlements and benefits, if any, under and pursuant to the Franchise Agreements and any applicable federal, state or local law: (i) to operate, use, market, advertise, and/or display any of the Acquired Assets

(including, without limitation, any rights with respect to any trademarks, service marks, trade names, telephone numbers and slogans that are included in the Acquired Assets), and (ii) to "operate a Business", as that term is used in each of the Franchise Agreements ((i) and (ii) collectively, the **"Franchisees' Rights"**), shall immediately cease and terminate in all respects.

W.    The Purchaser would not have entered into the Asset Purchase Agreement absent, among other things, the termination of the Franchisees' Rights.

X.    To the extent that any state, local or other franchise laws conflict with the terms of this Order or the impact of the rejection of the Franchise Agreements under the Bankruptcy Code and applicable law, such laws are preempted by the Bankruptcy Code, pursuant to the Supremacy Clause of the United States Constitution.

Y.    The Debtors have provided sufficient adequate assurances as required by Section 365(b) with respect to the Assigned Contracts and Assigned Leases.

Z.    Approval of the Asset Purchase Agreement and consummation of the Sale of the Acquired Assets at this time are in the best interests of the Debtors, their creditors, their estates and other parties in interest and are an exercise of the Debtors' sound business judgment.

## II.    DECRETAL PROVISIONS

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

### General Provisions

1.    Except to the extent that relief was previously granted in the Sale Procedures Order, the relief requested in the Motion is granted and approved as provided herein, subject to the terms and conditions as set forth herein.

2.    For the reasons set forth on the record at the Sale Hearing and in the Decision, all objections, including without limitation, the objections filed by the Franchisees, to the Motion

that have not been withdrawn, waived, settled, or specifically addressed in this Order, and all reservations of rights included in such objections, are overruled in all respects on the merits and denied with prejudice.

3. Except as expressly provided for herein, the terms and provisions of this Order shall be binding upon in all respects the Debtors, their officers, partners, managers, employees, directors, the Debtors' estates, and all persons or entities (as those terms are defined in the Bankruptcy Code) asserting claims against or interests in the Debtors, or their estates (including, but not limited to, all non-Debtor parties asserting any Liens and Claims in and against the Acquired Assets), the Purchaser and each of their respective officers, directors, partners, and members, the Franchisees and all other interested parties, and their respective successors and assigns.

## Approval of the Asset Purchase Agreement

4. The Asset Purchase Agreement substantially in the form attached hereto as *Exhibit A*, including all of the terms and conditions hereof, is hereby approved.

5. The End Date (as defined in the Asset Purchase Agreement) is hereby extended through August 20, 2009 (as may be further extended by written agreement between the Debtors and Purchaser).

6. Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtors are hereby authorized and empowered to take any and all actions necessary or appropriate to execute and deliver, perform under, consummate, implement, and close fully the Asset Purchase Agreement, together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement the transactions set forth in the Asset Purchase Agreement, which hereby is approved in its entirety and is incorporated herein by reference.

7.     This Order and the Asset Purchase Agreement shall be binding in all respects upon all creditors (whether known or unknown) of the Debtors, all successors and assigns of the Purchaser, the Debtors, and any subsequent trustee appointed in the Debtors' Chapter 11 Cases or upon a conversion to Chapter 7 under the Bankruptcy Code, and shall not be subject to rejection. This Order and the Asset Purchase Agreement shall inure to the benefit of the Debtors, their estates and creditors, the Purchaser and their respective successors and assigns.

8.     The consideration provided by the Purchaser for the Acquired Assets under the Asset Purchase Agreement is fair and reasonable and may not be avoided under Section 363(n) of the Bankruptcy Code.

## Sale of Acquired Assets Free and Clear

9.     Except as otherwise provided in the Asset Purchase Agreement, pursuant to section 363(f) of the Bankruptcy Code, the Acquired Assets being sold pursuant to the Asset Purchase Agreement shall be sold free and clear of any and all Liens and Claims including, without limitation, the Liens and Claims, if any, of (a) the Franchisees arising from or related to the Franchise Agreements, and (b) the Lenders, with all such Liens and Claims to attach to the proceeds of Sale and any other amounts payable to the Debtors under the Asset Purchase Agreement, with the same priority, validity, force and effect as existed prior to the sale of such assets under the Asset Purchase Agreement.

10.    Except as expressly provided for in the Asset Purchase Agreement, nothing in this Order or the Asset Purchase Agreement and none of Purchaser's actions taken in respect of the Sale shall be deemed to constitute an assumption by the Purchaser of any of Debtors' obligations relating to any of the Debtors' employees (other than as specifically set forth in Section 6.7 of the Asset Purchase Agreement).

11.     Notwithstanding anything to the contrary herein, the liens of Newco, JPMorgan Chase Bank and Rex Bedding Corp. shall be paid in full from the proceeds of sale upon the Closing of the Asset Purchase Agreement.

12.     This Order shall be effective as a determination that, on the Closing Date, (a) the Franchisees' Rights are terminated in all respects and (b) all Liens and Claims, of any kind or nature whatsoever including, without limitation, the Liens and Claims, if any, of (i) the Franchisees arising from or related to the Franchise Agreements, and (ii) the Lenders, existing as to the Debtors or the Acquired Assets, have been unconditionally released, discharged and terminated and that the conveyances described herein have been effectuated; provided, however, that the Purchaser shall not be relieved of liability with regard to the "Assumed Liabilities" defined in the Asset Purchase Agreement or as provided herein.

13.     The dispute between Consolidated and Amalgamated, on the one hand, and the Debtors, on the other, regarding ownership of the 1800 Mattress advertising jingle (the **"Jingle"**) is hereby resolved and the Jingle is deemed an "Acquired Asset" sold from the Debtors to the Purchaser under and pursuant to the Asset Purchase Agreement.

**Authorization to Assume and Assign Executory Contracts and Unexpired Leases**

14.     The Debtors are hereby authorized, pursuant to Section 365(a) of the Bankruptcy Code, to assume and assign to the Purchaser the Assigned Contracts and the Assigned Leases, as identified on *Exhibit B* hereto, which assumption and assignment shall be effective only upon the Closing Date of the sale of the Acquired Assets to the Purchaser.

15.     To the extent any of the Assigned Contracts or the Assigned Leases contain provisions that purport to limit assignment, the assumption and assignment of the Assigned Contracts and the Assigned Leases shall be permitted without regard to such provisions.

16.     Upon the assumption and assignment of the Assigned Contracts and the Assigned Leases to the Purchaser and the payment by Purchaser of all amounts necessary to cure any defaults under the Leases in accordance with Section 3.7 and Schedule 3.7(a) of the Asset Purchase Agreement, the Assigned Contracts and the Assigned Leases shall be valid, binding and enforceable in accordance with their respective terms, excluding and notwithstanding any provision in any of the Assigned Contracts and the Assigned Leases that may in any way prohibit, restrict or condition their assignment to the Purchaser.

17.     Notwithstanding any provision to the contrary in any of the Assigned Leases and/or in any statute or governing law, the Debtors request that the Purchaser be permitted to: (a) operate the assigned leased premises consistent with the Purchaser's use as a retail store; (b) operate the assigned leased premises under the trade name of its choosing; (c) perform non-structural or minor structural interior alterations and remodeling of the assigned leased premises without further consent of any person or party to the extent necessary to conform the layout of the premises to that of a typical retail store consistent with the Purchaser's use; (d) erect its customary and typical building facade signage (it being understood that the height of the channel letters of such signage shall in no event be less than the height of the channel letters of the Debtors' current signage) and insert its customary and typical signage on any shopping center multi-panel pylon sign in place of any such sign of the Debtors (it being understood that the size of the space on the pylon for such signage shall be equal to the size of the space allocated to the Debtors' current signage, if any); and (e) remain "dark" with respect to the assigned leased premises for up to an additional one hundred twenty (120) days after assignment to complete such alterations and remodeling as the Purchaser deems necessary or appropriate.

18.     The non-debtor parties to the Assigned Leases shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser, and not charge the Purchaser for, any instruments, applications, consents or other documents that may be required by any public or quasi-public authority or other party or entity, for the purpose of obtaining any permits, approvals or other necessary documents required for alteration, installation of signage, opening and/or operating of the assigned leased premises.

19.     The Debtors (and any co-tenant) are hereby relieved from any further liability with respect to the Assigned Contracts and the Assigned Leases pursuant to Section 365(k) of the Bankruptcy Code.

20.     Except for the Cure Costs (as defined in the Asset Purchase Agreement), the Purchaser shall have no liability whatsoever for any claims related to the Assigned Contracts and the Assigned Leases arising or accruing prior to the Closing Date of the transaction contemplated by the Asset Purchase Agreement.

**Authorization to Reject Executory Contracts and Unexpired Leases**

21.     The Debtors are hereby authorized to reject the Rejected Contracts and the Rejected Leases, each as set forth on *Exhibit C* hereto, pursuant to Section 365(a) of the Bankruptcy Code.

22.     Notwithstanding anything contained in Section 365 of the Bankruptcy Code to the contrary, the Rejected Leases governing the Open Stores and Warehouses (as reflected on *Exhibit C* hereto) are rejected effective as of the earlier of (a) the date the Debtors surrendered possession and delivered the keys to the leased premises to the landlords and (b) the date of entry of the Sale Order.  The Rejected Leases governing the Closed Stores and Warehouses are hereby rejected effective as of the dates set forth on *Exhibit C* hereto.

23.     The Rejected Contracts (including, but not limited to, the Franchise Agreements) are hereby rejected effective as of the Closing Date.

24.     The private label credit card Retail Services Dealer Agreement between Citicorp Trust Bank (**"CTB"**) and the Debtors is rejected effective as of the Closing Date.  CTB is authorized to deduct from amounts due the Debtors for daily settlements a total of $60,000, to be held as a reserve against customer chargebacks and expenses (the **"CTB Reserve"**).  The CTB Reserve may be held by CTB for four (4) months after the date of entry of this Order (the **"Reserve Period"**).  The remaining balance of the CTB Reserve, if any, shall be paid to the Debtors promptly after the expiration of the Reserve Period and in no event later than five (5) business days of such date.  Any cardholder-asserted dispute in process but not yet charged back as of the date of the expiration of the Reserve Period may be deducted from the CTB Reserve, but if such dispute is ultimately resolved without a chargeback, then CTB shall promptly reimburse the Debtors' estates for the chargeback amount.

25.     The rejection of the Franchise Agreements terminates any and all of the Franchisees' Rights or obligations the Franchisees, and any shareholder, director or officer have, had or may have had with respect to the Acquired Assets including, without limitation, any rights with respect to the use of the trademarks, service marks, trade names, telephone numbers and slogans that are included in the Acquired Assets, and any obligations in the Franchise Agreements with respect to, among other things, any restrictive covenants or non-competition provisions.  The Franchisees are not entitled to the protections offered under Section 365(n) of the Bankruptcy Code.

26.     Any and all inventory, furniture, fixtures, equipment and/or anything else remaining at any of the leased premises governed by any Rejected Lease of non-residential real

property shall be deemed abandoned to the respective landlords pursuant to Section 554 of the

Bankruptcy Code effective as of the date the leased premises are vacated by the Debtors and the

landlords are hereby authorized to dispose of any such abandoned property in their discretion

without any liability to the landlord for such disposal.

## Employee Claims

27.     The Debtors and the Committee shall review and evaluate the Employee Claims

(as that term is defined in the Asset Purchase Agreement) in the ordinary course of the claims

reconciliation process in these cases and shall consult with the Purchaser prior to the Allowance

(as defined in the Asset Purchase Agreement) of any Employee Claims.

## Purchaser Entitled to Good Faith Protection

28.     All of the transactions contemplated by the Asset Purchase Agreement shall be

protected by section 363(m) of the Bankruptcy Code in the event that this Order is reversed or

modified on appeal.

29.     Subject to the ten (10) day stay period provided for under Bankruptcy Rules 6004

and 6006, this Order shall be effective and enforceable immediately on the eleventh (11th) day of

its entry and its provisions shall be self-executing.  In the absence of any person or entity

obtaining a stay pending appeal, the Debtors and Purchaser are free to perform under the Asset

Purchase Agreement at any time, subject to the terms of the Asset Purchase Agreement, and the

Purchaser shall be afforded the protections of section 363(m) of the Bankruptcy Code as to all

aspects of the transactions under and pursuant to the Asset Purchase Agreement if this Order or

any authorization contained herein is reversed or modified on appeal.

## Consolidated Group Settlement

30.     Notwithstanding anything to the contrary in this Order, none of the findings or decretal provisions herein that would determine or impair in any manner any rights of ownership or usage of any Intellectual Property, including without limitation, alleged rights of Consolidated and Amalgamated as licensees under Section 365(n) of the Bankruptcy Code, other rights under Section 365 of the Bankruptcy Code, or otherwise under applicable law, shall be binding upon the Consolidated Group unless and until it has received the Settlement Amount (as defined below) pursuant to the terms of this Order.

31.     The Consolidated Group shall be paid $10 million in cash (the **<u>Settlement Amount</u>**") on the Closing Date in full and final satisfaction of all claims, at law, equity or otherwise, that have been or may be asserted in the future by Amalgamated and Consolidated against any of the Debtors arising from, or related to, among other things: (a) the rejection of the Amalgamated Franchise Agreement and/or the Consolidated Franchise Agreement; (b) the Sale of the Intellectual Property (as that term is defined in the Asset Purchase Agreement); and (c) any other matter in these Chapter 11 Cases.  Payment of the Settlement Amount shall not be subject to defenses, offset, or counterclaim and shall be by wire transfer as reasonably directed by counsel to the Consolidated Group on or prior to the Closing Date.

32.     Effective immediately, but subject to their receipt of the Settlement Amount, the objections to the Sale filed by the Consolidated Group are hereby withdrawn with prejudice.

33.     Effective upon receipt of the Settlement Amount, Amalgamated and Consolidated, their respective representatives, shareholders, officers, directors, members, agents, employees, successors, assigns and any subsidiary or affiliated persons, firms or corporations (collectively, the **<u>Franchisee Releasors</u>**"), hereby do remise, release and forever discharge

each of the Debtors, Newco and Sleepy's LLC and each of their respective estates, directors, officers, shareholders, members, representatives, agents, employees, successors and assigns (collectively, the **"Debtor and Purchaser Releasees"**) from any and all claims, actions, suits, accounts, covenants, contracts, controversies, damages, judgments, and demands, of whatever kind or nature, at law, in equity or otherwise, which the Franchisee Releasors ever had, now have, or which their successors or assigns hereafter can, shall or may have, for, upon or by reason of any matter or thing whatsoever arising on or before the Closing Date, including without limitation, those arising out of or related to the Consolidated Franchise Agreement, the Amalgamated Franchise Agreement, the Sale, the Asset Purchase Agreement and these Chapter 11 Cases.

34.     Effective on the Closing Date and upon payment of the Settlement Amount to Amalgamated and Consolidated, each of the Debtors, Newco and Sleepy's LLC, for themselves and for each of their respective shareholders, officers, directors, members, agents, employees, successors and assigns (collectively, the **"Debtor and Purchaser Releasors"**) hereby do remise, release and forever discharge Consolidated and Amalgamated and each of their representatives, shareholders, officers, directors, members, agents, employees, successors, assigns and any subsidiary thereof (collectively, the **"Franchisee Releasees"**), from any and all claims, actions, suits, accounts, covenants, contracts, controversies, damages, judgments and demands, of whatever kind or nature, at law, in equity or otherwise, which the Debtor and Purchaser Releasors ever had, now have or which their respective successors or assigns hereafter, can, shall or may have, for upon or by reason of any matter or thing whatsoever arising on or before the Closing Date, including without limitation those arising out of or related to the Consolidated

Franchise Agreement, the Amalgamated Franchise Agreement, the Sale, the Asset Purchase Agreement and these Chapter 11 Cases.

## Reservation of Rights

35.     Notwithstanding anything to the contrary herein, Rectangle's rights to assert and prosecute any damage claim arising from the rejection of the Rectangle Franchise Agreement are hereby expressly reserved.  Each of the Debtors' and the Committee's rights to object to any such rejection damage claim and/or to assert any claim against Rectangle including, without limitation, for unpaid royalty fees, are hereby expressly reserved.

## Extension of Maturity Date and Increase in Borrowings
## Under DIP Loan and Security Agreement

36.     The Maturity Date under that certain Loan and Security Agreement dated as of March 27, 2009 by and between the Debtors and Newco (the **"DIP Loan"**) is hereby extended to August 20, 2009 and the total borrowings under the DIP Loan are hereby increased from One Million Two Hundred Fifty Thousand Dollars and 00/100 ($1,250,000.00) to One Million Three Hundred Fifty Thousand Dollars and 00/100 ($1,350,000.00).

## Wind-Down Issues

37.     Amalgamated, Consolidated and Rectangle shall have through and including 5:00 p.m. Eastern Daylight Time on the Closing Date (the **"Transition Deadline"**) to wind-down any and all operations conducted in accordance with the Franchise Agreements, on a royalty-free basis, and to transition out of the Dial A Mattress, 1-800 Mattress business; provided, however, that with respect to any orders pending as of the Transition Deadline, the Consolidated Group shall be permitted to fulfill such orders until 5:00 p.m. Eastern Daylight Time on August 21, 2009.  Any deliveries made pursuant to the preceding proviso (i.e., deliveries made after the Transition Deadline) may not be made using trucks or other vehicles with visible markings

containing the 1-800-Mattress or Dial-A-Mattress names or logos. Pending the Closing Date, the Debtors shall continue to process internet and telephone orders in a manner consistent with their prior practices.

38.     The Debtors, the Committee, and the Purchaser shall each employ commercially reasonable best efforts to ensure that the Closing Date is August 17, 2009; provided, however, that in any event, the Closing Date shall be on or prior to August 21, 2009.

39.     The Debtors, the Committee and the Purchaser shall each make good faith efforts to promptly advise the Consolidated Group of any events or occurrences that may affect the likelihood that the Sale will close on August 17, 2009, and shall generally keep the Consolidated Group apprised of any changes to the status of the Closing Date.

40.     Any and all provisions contained in this Order relating to the termination of Amalgamated, Consolidated and Rectangle's rights to use the Intellectual Property of the Debtors under the Franchise Agreements, including the Injunctive Relief provisions hereof shall be effective as of 5:00 p.m. Eastern Daylight Time on the Closing Date.

41.     The Franchisees shall cooperate with any reasonable requests made by the Debtors and/or the Purchaser with respect to the wind-down, including, without limitation, by employing commercially reasonable best efforts to facilitate terminating, re-routing, and/or redirecting the Dial-A-Mattress phone numbers to the Purchaser.

42.     From the Closing Date through December 31, 2009, Newco shall reasonably cooperate with the Debtors and provide the Debtors with space and services to conduct the wind-down of their operations and these Chapter 11 Cases at the Debtors' headquarters located at 31-10 48th Avenue, Long Island City, New York.

## No Waiver of Stay Under Bankruptcy Rules 6004 and 6006

43.     This Order is stayed pursuant to Bankruptcy Rules 6004 and 6006 until the expiration of ten (10) days after the date of entry thereof.

## Injunctive Relief

44.     Except as expressly permitted or otherwise specifically provided by the Asset Purchase Agreement or this Order, all persons and entities (as those terms are defined in the Bankruptcy Code), including, but not limited to, all holders of Liens and Claims against or in the Debtors or the Acquired Assets, arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the operations of the Debtors' business prior to Closing, or the transfer of the Acquired Assets to the Purchaser are hereby forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors and assigns, its property or the Acquired Assets such persons' or entitles ' Liens and Claims. Additionally, upon the Closing Date, the Franchisees are hereby forever barred, estopped, and permanently enjoined from using, exercising or asserting in any manner whatsoever any of the Franchisees' Rights.

## Enabling Authority

45.     The Debtors are authorized and empowered to transfer the Acquired Assets to the Purchaser in accordance with the Asset Purchase Agreement.

46.     This Court shall retain exclusive jurisdiction with regard to all issues or disputes in connection with this Order and the relief provided for herein, including, without limitation, to protect the Debtors and the Purchaser from interference with the Sale, and to resolve any disputes related to the Sale or arising under the Asset Purchase Agreement or the implementation thereof.

47.     The Purchaser shall not be liable for any claims against the Debtors other than as expressly provided for in the Asset Purchase Agreement or as otherwise provided under this Order.

48.     The Debtors, the Purchaser and each of their respective officers, employees and agents be, and they hereby are, authorized to execute such documents and to do such acts as are necessary or desirable to carry out the Sale and effectuate the Asset Purchase Agreement and the related actions set forth therein.

49.     The provisions of this Order and the Asset Purchase Agreement and any actions taken pursuant hereto or thereto shall survive entry of any order which may be entered confirming or consummating any plan of reorganization or liquidation of the Debtors, or which may be entered converting Debtors' cases from chapter 11 to chapter 7, and the terms and provisions of the Asset Purchase Agreement as well as the rights and interests granted pursuant to this Order and the Asset Purchase Agreement shall continue in this or any superseding cases and shall be binding upon the Debtors, the Purchaser and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.  Any trustee appointed in these cases shall be and hereby is authorized to operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of this Order and the Asset Purchase Agreement and the Purchaser and the trustee shall be and hereby are authorized to perform under the Asset Purchase Agreement upon the appointment of a trustee without the need for further order of this Court.  In the event the chapter 7 trustee determines that it needs further order of this Court in connection with the continued operation of the business, such motion shall be heard on an expedited basis upon the request of either the chapter 7 Trustee or the Purchaser.

50.     This Order constitutes an authorization of conduct by the Debtors and nothing contained herein shall be deemed to constitute a ruling with regard to the sovereign immunity of any state, and the failure of any state to object to the entry of this Order shall not operate as a waiver with respect thereto.

51.     To the extent that anything contained in this Order conflicts with a provision in the Motion, the Asset Purchase Agreement or the Decision, this Order shall govern and control. This Court shall retain jurisdiction with respect to any matters, claims, rights, or disputes arising from or related to the implementation of this Order.

52.     Nothing contained in (i) any plan of reorganization or liquidation filed in these Chapter 11 Cases, or (ii) order of any type or kind entered in (a) these Chapter 11 Cases, (b) any subsequent Chapter 7 case into which any such Chapter 11 Case may be converted or (c) any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the term of this Order.

53.     The Purchaser is a party in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Order, the Asset Purchase Agreement and the conduct of the Sale.

## Retention of Jurisdiction

54.     This Court retains exclusive jurisdiction to interpret and enforce this Order and the Asset Purchase Agreement and to adjudicate, if necessary, any and all disputes concerning or relating in any way to, or affecting, any of the transactions contemplated by such documents, including, without limitation, the conduct of the Sale.

55.     The Asset Purchase Agreement approved herein and any related documents or other instruments may be modified, amended or supplemented without further order of this Court

(provided that such modification, amendment or supplement has been approved in writing by the Debtors, the Purchaser and the Committee), except that Court approval shall be required if such amendment, modification or supplement has a material negative effect on the Debtors or their estates or is in contravention of this Order.

## Other Provisions

56. All proceeds of sale shall be held in escrow by the Debtors' counsel at one or more banking institutions approved by the Office of the United States Trustee.

57. Notwithstanding anything to the contrary herein, the Debtors are hereby authorized to satisfy the claims of JP Morgan Chase Bank, N.A. and Rex Bedding Corp. in full from the proceeds of Sale upon the closing of the Asset Purchase Agreement.

58. The Debtors shall include in the Monthly Operating Report for the month in which the Closing occurs a statement of disbursements made by or on behalf of the Debtors at the Closing.

59. Nothing in this Order or the Asset Purchase Agreement approves or provides for the transfer to the Purchaser of any Avoidance Claims (as that term is defined in the Asset Purchase Agreement) under Chapter 5 of the Bankruptcy Code which Avoidance Claims shall be retained by the Debtors' estates.

60. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale or the transactions contemplated by the Asset Purchase Agreement.

61. There are no brokers for the Debtors involved in consummating the sale and no broker's commissions are due from the Debtors, except that the Debtors have retained TRN and

Debtors shall pay TRN such fees as are approved by the Bankruptcy Court.

62.     The provisions of this Order are non-severable and mutually dependent.


Dated:  August <u>7,</u> 2009
        Brooklyn, New York

                                        s/Dennis E. Milton
                                        THE HONORABLE DENNIS E. MILTON
                                        UNITED STATES BANKRUPTCY JUDGE

F:\Dial A Mattress\Bankruptcy Filings\Sale Order\Proposed Sale Orderv24 (final 7-31-09).doc